Filed 12/28/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NANCY GRASSI,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | G060362<br><br>(Super. Ct. Nos. 19WM15522, 30-2021-01194652)<br><br>O P I N I O N |

Original proceedings; petition for writ of mandate to challenge an order of the Superior Court of Orange County, Cheryl L. Leininger, Judge. Petition denied.

Martin F. Schwarz, Public Defender, Sara Ross, Assistant Public Defender, and Shawn McDonald, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Todd Spitzer, District Attorney, and George Turner, Deputy District Attorney, for Real Party in Interest.

Nancy Grassi filed a petition for writ of mandate arguing the trial court erred by concluding she was statutorily ineligible for misdemeanor diversion. Grassi argues Penal Code section 1001.95's plain language and legislative history makes diversion available to misdemeanor driving under the influence defendants despite Vehicle Code section 23640's prohibition on granting diversion to driving under the influence defendants.

In this case of first impression, we conclude the two statutes can be harmonized to provide diversion to misdemeanor defendants, except for those defendants excluded in Penal Code section 1001.95, subdivision (e), and misdemeanor driving under the influence defendants pursuant to Vehicle Code section 23640. We deny the petition.

FACTS

In August 2019, the Orange County District Attorney (OCDA) filed a complaint charging Grassi with misdemeanor driving under the influence of drugs (Veh. Code, § 23152, subd. (f), hereinafter "DUI" or "DUIs"). At her arraignment weeks later, Grassi pleaded not guilty, and the trial court ordered her to remain released on her own recognizance.

On January 1, 2021, Penal Code section 1001.95 [1]went into effect. (Stats. 2020, ch. 334, § 1, pp. 3785-3786.) The following month, Grassi filed a motion for misdemeanor diversion pursuant to section 1001.95. The OCDA filed an opposition arguing she was statutorily ineligible for misdemeanor diversion pursuant to Vehicle Code section 23640 (section 23640 or § 23640). Relying on section 23640 and *Tellez v. Superior Court* (2020) 56 Cal.App.5th 439 (*Tellez*), the trial court denied the motion. Grassi filed a petition for writ of mandate with the appellate division. After further briefing, that court denied Grassi's petition.

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

In this court, Grassi filed a petition for writ of mandate and exhibits. Seven exhibits concerned section 1001.95's legislative history. This court issued an order to show cause. After the OCDA filed his return, Grassi filed a reply and included additional exhibits. Those exhibits included six new documents regarding section 1001.95's legislative history. With her reply, Grassi also filed a request for judicial notice of these documents and two recordings, which we discuss below. We heard oral argument.

DISCUSSION

*I. Preliminary Matters*

The OCDA states he will leave it to this court to determine whether writ review is timely and appropriate. The OCDA does not provide any argument on either subject. We trust that if he believed Grassi's petition was untimely or review is inappropriate, he would say so. But he does not, and we will proceed to the merits. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 [failure to support contention with reasoned argument and legal authority results in forfeiture].)

*II. Retroactivity*

The Legislature enacted section 1001.95 after the OCDA charged Grassi with misdemeanor DUI. Nevertheless, neither Grassi nor the OCDA discuss whether section 1001.95 applies retroactively. Since section 1001.95 provides for a potential ameliorative benefit, we conclude a person charged with misdemeanor DUI has the right to have the court determine if he or she is eligible and suitable for diversion if the case is not final. (*People v. Frahs* (2020) 9 Cal.5th 618, 638; *In re Estrada* (1965) 63 Cal.2d 740, 744-745.)

*III. Judicial Notice*

The Orange County Public Defender (OCPD) requests we take judicial notice of the following exhibits he included with the reply, and not with the petition.

1. Text of Assembly Bill No. 2124—Misdemeanor Diversion Pilot Program (LA pilot program) (Exhibit O);

3

2. Transcript of the August 24, 2020, Assembly floor debate on Assembly Bill No. 3234 (AB 3234) (Exhibit P);

3. Floor Alert—OCDA's letter of August 20, 2020, Opposing AB 3234 (Exhibit Q);

4. Floor Alert—California District Attorneys Association's (CDAA) letter of August 24, 2020, Opposing AB 3234 (Exhibit R);

5. Floor Alert—Judicial Council of California's (Judicial Council) letter of August 31, 2020, Opposing AB 3234 (Exhibit S);

6. Transcript of the August 31, 2020, Senate floor debate on AB 3234 (Exhibit T);

7. The August 24, 2020, Assembly floor debate on AB 3234, which is available at: https://www.assembly.ca.gov/media/assembly-floor-session-20200824/video; and

8. The August 31, 2020, Senate floor debate on AB 3234, which is available at: https://www.senate.ca.gov/media/senate-floor-session-20200831/video.

"A motion for judicial notice of published legislative history, such as the . . . analysis here, is unnecessary. [Citation.] 'Citation to the material is sufficient. [Citation.] We therefore consider the request for judicial notice as a citation to those materials that are published.' [Citation.]" (*Wittenburg v. Beachwalk Homeowners Assn.* (2013) 217 Cal.App.4th 654, 665, fn. 4.)

All of these documents were available when the OCPD filed his petition for writ of mandate, and all concern section 1001.95's legislative history, a topic the OCPD discusses in his petition. This practice is disfavored.

Nevertheless, we treat Grassi's request to take judicial notice of item Nos. 1, 2, 6, 7, and 8 as citations to those materials and deny her request to take judicial notice of them. As to item Nos. 3, 4, and 5, the floor alerts have sufficient relevance on appeal

4

to support our taking judicial notice of them. (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1210-1211, fn. 6 [taking judicial notice of floor alerts].)

*IV. Discussion*

*A. Statutory Language*

Grassi contends section 1001.95's plain language requires diversion for all misdemeanor defendants, including misdemeanor DUI defendants, except those excluded in subdivision (e). Grassi's plain language construction of section 1001.95 is appealing, until one considers section 23640.

"This is a question of statutory construction. We seek to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] '[W]e begin by looking to the statutory language. [Citation.] We must give "the language its usual, ordinary import and accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." [Citation.] If the statutory language is susceptible of more than one reasonable interpretation, we must look to additional canons of statutory construction to determine the Legislature's purpose. [Citation.] "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent."' [Citation.]" (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849-850 (*Carmack*).) "This case poses a pure question of statutory interpretation, subject to independent review. [Citation.]" [2] (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 633.)

---

[2] Curiously, the OCPD asserts our review is abuse of discretion, a more deferential standard than independent review.

The starting point for our analysis is section 23640. Operative in 1999, section 23640, subdivision (a), states, "In any case in which a person is charged with a violation of [Vehicle Code] [s]ection 23152 [DUI] or [Vehicle Code section] 23153 [DUI causing injury], prior to acquittal or conviction, the court shall neither suspend nor stay the proceedings for the purpose of allowing the accused person to attend or participate, nor shall the court consider dismissal of or entertain a motion to dismiss the proceedings because the accused person attends or participates during that suspension, in any one or more education, training, or treatment programs, including, but not limited to, a driver improvement program, a treatment program for persons who are habitual users of alcohol or other alcoholism program, a program designed to offer alcohol services to problem drinkers, an alcohol or drug education program, or a treatment program for persons who are habitual users of drugs or other drug-related program."

Section 23640 prohibits diversion in DUI cases. (*People v. Weatherill* (1989) 215 Cal.App.3d 1569, 1572 (*Weatherill*).) [3] By its plain language, section 23640 applies to Grassi because the OCDA charged her with misdemeanor DUI in violation of Vehicle Code section 23152.

Nevertheless, Grassi contends she was eligible for diversion pursuant to section 1001.95. Section 1001.95 authorizes a trial court to offer a misdemeanor

---

[3]        In 1998, former section 23202 was renumbered to section 23640 without substantive change. (Stats. 1998, ch. 118, § 84, pp. 772-814.)

defendant diversion, except for four express exclusions.[4]  Section 1001.95 provides as follows:

"(a) A judge in the superior court in which a misdemeanor is being prosecuted may, at the judge's discretion, and over the objection of a prosecuting attorney, offer diversion to a defendant pursuant to these provisions.

"(b) A judge may continue a diverted case for a period not to exceed 24 months and order the defendant to comply with terms, conditions, or programs that the judge deems appropriate based on the defendant's specific situation.

"(c) If the defendant has complied with the imposed terms and conditions, at the end of the period of diversion, the judge shall dismiss the action against the defendant.

"(d) If it appears to the court that the defendant is not complying with the terms and conditions of diversion, after notice to the defendant, the court shall hold a hearing to determine whether the criminal proceedings should be reinstituted. If the court finds that the defendant has not complied with the terms and conditions of diversion, the court may end the diversion and order resumption of the criminal proceedings.

"(e) A defendant may not be offered diversion pursuant to this section for any of the following current charged offenses:

---

[4]     The Legislature's purpose in enacting section 1001.95 was to treat, restore, and rehabilitate.  A Senate Floor Analysis makes this point.  "Diversion programs that are successfully completed allow a person to avoid the lifelong collateral consequences associated with a criminal record when they are seeking employment or housing. Diversion programs typically require individuals to fulfill strict requirements, including participating in a rehabilitation program. This proactive approach has shown to yield better recidivism rates than merely prosecuting and jailing an individual." (Sen. Rules Com., Off. of Sen. Floor Analysis, 3d reading analysis of Assem. Bill No. 3234 (2019-2020 Reg. Sess.) as amended Aug. 24, 2020, at p. 2.)

(1) Any offense for which a person, if convicted, would be required to register pursuant to [s]ection 290.

(2) A violation of [s]ection 273.5.

(3) A violation of subdivision (e) of [s]ection 243.

(4) A violation of [s]ection 646.9."

Section 1001.95 authorizes diversion in misdemeanor cases except for those offenses in subdivision (e), which does *not* include DUIs. [5]

Both statutes are unambiguous in their plain language. When it comes to misdemeanor DUI defendants, section 23640 prohibits a court from doing what section 1001.95 permits it to do. "[T]he statutes are in conflict and thus one must be interpreted as providing an exception to the other." (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 956 (*State Dept. of Public Health*).) Is section 23640 an exception to section 1001.95? Or is section 1001.95 an exception to section 23640? Or can we harmonize the statutes to give them both effect?

Before we consider section 1001.95's legislative history and the canons of statutory construction, we discuss the interplay between section 23640 and other diversion statutes for context and to help inform our decision. We also discuss two recent superior court appellate division cases that have addressed the identical issue presented here.

---

[5] Two bills subsequently attempted to address DUIs in section 1001.95. Assembly Bill No. 282 made misdemeanor DUIs ineligible. In July 2021, the Senate Public Safety Committee voted against the bill but granted reconsideration. Senate Bill No. 421 made misdemeanor DUIs eligible under specified conditions. In April and May 2021, two Senate committees approved this bill. To date, the Legislature has not amended section 1001.95.

*B. Diversion Statutes & Corresponding Case Authority*

*1. Developmentally Disabled Diversion*

Over 30 years ago, the court in *Weatherill, supra,* 215 Cal.App.3d at page 1573**,** addressed the interplay between Vehicle Code section 23202,[6] section 23640's predecessor, and section 1001.21, diversion for developmentally disabled persons.  The majority held Vehicle Code section 23202, subdivision (a)'s plain language prohibited a trial court from granting a developmentally disabled DUI defendant diversion. (*Id*. at p. 1573.) The court opined the Legislature's use of the "all-inclusive" words, "'if *any* person'" demonstrated its intent "*all*" DUI defendants "without exception, shall have their guilt or innocence determined without delay and without diversion." (*Ibid*.)  The court stated its inquiry would normally end but not for defendant's insistence section 1001.21 allowed diversion for developmentally disabled DUI defendants.  (*Ibid*.)

After the *Weatherill* court discussed the Legislature's intent to curb the evils of DUIs and the advent of diversion programs, including the "'Lucky Deuce'" diversion program for first-time DUI offenders, by imposing swift and certain punishment, the court turned to defendant's argument Vehicle Code section 23202 and section 1001.21 did not conflict. (*Weatherill, supra,* 215 Cal.App.3d at pp. 1574-1577.) The court disagreed, opining "[t]he two sections irreconcilably conflict.'" (*Id*. at p. 1577, fn. omitted.) The court looked to extrinsic aides, including canons of statutory construction, to resolve the conflict. Citing to the canon a specific statute controls over a conflicting general statute, the court reasoned the subject matter of Vehicle Code section 23202 was more specific because it only "applie[d] to a single type of conduct" whereas section 1001.21 "comprehend[ed] hundreds of misdemeanors in scores of codes."  (*Id*. at

---

[6]      The court also addressed a similar postconviction provision, Vehicle Code section 23206.

pp. 1577-1578.) The court also relied on the canon the more recent Vehicle Code section 23202 superseded the older section 1001.21. (*Id*. at p. 1578.) Responding to defendant's and the dissent's reliance on the canon "'"'the expression of certain things in a statute necessarily involves exclusion of other things not expressed[,]"'"' the majority opined the canon was inapplicable because by its plain language, "there [was] no 'expression of *certain* things[]'" and "it includes everything." (*Id*. at pp. 1578-1579.) The court acknowledged other subsequently enacted diversion schemes included specific exclusions for DUIs, but this was only "in order to avoid the risk of implied repeal" of Vehicle Code section 23202, which buttressed the Legislature's consistent intent it "bars all diversion programs." (*Id*. at pp. 1579-1580.)

In dissent, Justice Johnson explained he dissented in this "extraordinarily close case" where the majority "presented a well-reasoned" analysis "more out of frustration than conviction" because the Legislature "left the courts in a quandary." (*Weatherill, supra,* 215 Cal.App.3d at pp. 1580-1581 (dis. opn. of Johnson, J.).) Justice Johnson agreed the two sections were in conflict, invited the Legislature to resolve the matter, and concluded the more persuasive view was defendant was eligible for diversion. (*Id*. at p. 1581.) He explained that "[i]t c[ould] be contended just as forcefully that Vehicle Code section 23202" was the general statute because it applied to all DUI cases while section 1001.21 applied only to a specialized class of defendants. (*Id*. at p. 1582.) He concluded the sequence of enactment canon was inapplicable because the implied amendment of an existing statute by a subsequently enacted statute was disfavored and the sections could be reconciled. (*Id*. at p. 1583.) He opined the canon "the expression of certain things in a statute necessarily involves exclusion of other things not expressed[]" was applicable because section 1001.21 did not prohibit diversion for developmentally disabled DUI defendants whereas other diversion programs did. (*Id*. at pp. 1583-1584.) With regard to the legislative history, he read it to reflect an intent in

10

Vehicle Code section 23202 only to eliminate the Lucky Deuce program and not diversion for the developmentally disabled. (*Id*. at pp. 1584-1586.)

*2. Military Diversion*

Twenty-five years later, the Legislature enacted section 1001.80, military diversion. (Stats. 2014, ch. 658, § 1, pp. 4312-4313.) In *People v. VanVleck* (2016) 2 Cal.App.5th 355, 363 (*VanVleck*), the court held section 1001.80 was not an exception to section 23640. The court noted that "[w]hile the Legislature did not specifically include or exclude [DUI] misdemeanors from military diversion, [it] presume[d] the Legislature was aware of" section 23640 and *Weatherill's* holding section 23640 prohibited diversion for all DUI offenses when it enacted section 1001.80. (*Id*. at pp. 363-364.) The court opined that in light of the preexisting legal authority and decisional interpretations, it was incumbent on the Legislature to expressly include DUI cases as eligible for military diversion if that was what it intended. (*Id*. at pp. 364, 365, fn. 3, 366-367.) Additionally, the court turned to the canons of statutory construction to resolve the conflict between section 23640 and section 1001.80. (*Id*. at p. 364.) Acknowledging section 1001.80 was the more recent statute, the court opined, "the rule that the more specific statute controls over a general one prevails over the rule that the later-enacted statute controls." (*Id*. at p. 365.) The court reasoned section 23640, which applied to a single type of conduct controlled over section 1001.80, which applies to all misdemeanors. (*Ibid*.)

The court in *Hopkins v. Superior Court* (2016) 2 Cal.App.5th 1275, 1278-1279 (*Hopkins*), addressed the identical issue as the *VanVleck* court, and reached the opposite conclusion. The *Hopkins* court examined the statutes' express language and concluded it could not reconcile them. (*Id*. at pp. 1281-1283.) The court considered the canons of statutory construction. (*Ibid*.) Citing to Justice Johnson's dissent in *Weatherill, supra,* 215 Cal.App.3d at page 1582 (dis. opn. of Johnson, J.), the *Hopkins*

11

court found the general-versus-specific-statute canon unhelpful because it could apply either way depending on one's "arbitrary choice of focus." (*Hopkins, supra,* 2 Cal.App.5th at pp. 1283-1284.) The court instead concluded the earlier-versus-later-statute canon could only apply in one direction—the newer section 1001.80 superseded the older section 23640 to the extent they conflicted. (*Id*. at p. 1284.) The court questioned the *VanVleck* court's presumption the Legislature was aware of existing statutes and prior judicial decision. (*Id*. at p. 1285.) Finally, the court noted the strong public policy to create a diversion program to assist the military and veterans. (*Id*. at pp. 1286-1288.)

Our Supreme Court granted review in both cases. (*Hopkins, supra,* 2 Cal.App.5th 1275, review granted Nov. 16, 2016, S237734; *VanVleck, supra,* 2 Cal.App.5th 355, review granted Nov. 16, 2016, S237219.) Before the court could rule, the Legislature resolved the conflict by amending section 1001.80 to make misdemeanor DUI offenses eligible for diversion. (§ 1001.80, subd. (l), added by Stats. 2017, ch. 179, § 1, pp. 2043-2045.)

*3. Mental Health Diversion*

The following year, the Legislature enacted section 1001.36, mental health diversion. (Stats. 2018, ch. 34, § 24, pp. 1316-1319.) In *Tellez, supra,* 56 Cal.App.5th at page 448, the court held section 23640 prohibited granting diversion to persons in mental health courts. The court opined section 23640 and section 1001.36 conflicted because the former prohibited diversion for DUI defendants while the latter allowed mental health diversion for qualifying defendants. (*Id*. at pp. 443-444.) The court asked which section was an exception to the other section? (*Id*. at p. 444.) The court reasoned the legislative history answered the question and turned to the military diversion statute, section 1001.80, to inform its decision. (*Ibid*.) After discussing section 1001.80, *VanVleck*, *Hopkins*, and the Legislature's response, the court noted the Legislature considered section 1001.80, the enactment of section 1001.36, and the amendment of section

12

1001.36 during the same legislative session. (*Id*. at pp. 444-447.) The court noted a senate bill excluded DUIs as an eligible offense, an assembly bill was silent on the topic, and the Legislature ultimately did not address the topic when it both enacted and amended section 1001.36. (*Id*. at p. 447.) The court found it dispositive the Legislature did not expressly address DUI offenses when it enacted and amended section 1001.36 during the same legislative session it did expressly address DUI offenses when it amended section 1001.80. (*Id*. at p. 448.)

The *Tellez* court explained the following: "This history establishes that the Legislature wanted the existing bar on diversion for DUI offenses [contained in section 23640] to take precedence [over section 1001.36]. The Legislature was familiar with the conflict between . . . section 23640 and diversion statutes and knew how to clarify that the diversion statute should control over the Vehicle Code, having recently confronted the issue with respect to military diversion. What is more, the earlier version of [section 1001.36] would have clarified that mental health diversion applied notwithstanding any other law, but the Legislature abandoned that 'notwithstanding' clause in the final version of [the law]. The Legislature's failure to amend . . . section 1001.36 in the same way that it had recently amended the military diversion statute [by adding subdivision (l) to section 1001.80] indicates that the Legislature did not intend to override . . . section 23640. Instead, the Legislature intended that the decades-old prohibition against diversion for DUI offenses should prevail." (*Tellez, supra,* 56 Cal.App.5th at p. 448.)

The *Tellez* court rejected defendant's claim it should not read words into section 1001.36. (*Tellez, supra,* 56 Cal.App.5th at p. 448.) The court explained it was unnecessary to add DUI offenses to the list of ineligible offenses (§ 1001.36, subd. (b)(2)), because section 23640 already excluded them. (*Ibid*.) The court also rejected his reliance on the canon of statutory construction that later enactments supersede earlier enactments. (*Id*. at pp. 448-449.) After noting the canons were merely aids that were not infallible, the court concluded resort to the canons was unnecessary because the

13

legislative history answered the question—section 23640 was an exception to section 1001.36. (*Id*. at pp. 444, 449.)

As relevant here, the *Tellez* court opined the following: "We do not believe it is clear whether DUI offenses are eligible for the new misdemeanor diversion program, and we need not decide the issue. Even assuming that DUI offenses are eligible for such diversion, it does not follow that DUI offenses are also eligible for mental health diversion. Misdemeanor diversion already exists. In 1982, the Legislature enacted two sets of statutes providing for misdemeanor diversion programs. (. . . §§ 1001-1001.9, 1001.50-1001.55 . . . .) When the Legislature did so, it expressly excluded DUI offenses from eligibility. ( . . . §§ 1001.2, subd. (a), 1001.51, subds. (b), (c)(6).) In view of that history, the Legislature's failure to expressly exclude DUI offenses this time around is a good indicator that it intended DUI offenses to be eligible for the new misdemeanor program." (*Tellez, supra,* 56 Cal.App.5th at pp. 449-450.)

In *Moore v. Superior Court* (2020) 58 Cal.App.5th 561, 579 (*Moore*), a slightly different panel of the same court reaffirmed its conclusion that if the Legislature had intended DUI defendants to be eligible for mental health diversion, it would have repealed or amended section 23640, or it would have "'carve[d] out an exception'" to section 23640 in section 1001.36 like it had done to section 1001.80 for military diversion. The *Moore* court rejected defendant's reliance on the canons of statutory construction, the expression of some things means the exclusion of others and the later enactments supersede earlier enactments, because the Legislature's intent was evident. (*Id*. at pp. 579-580.) Finally, like the *Tellez* court, the *Moore* court declined to look to section 1001.95 because that statute was not at issue. (*Id*. at pp. 581-582.)

4. *Misdemeanor Diversion*

No appellate court has weighed in on the issue before us. However, two superior court appellate division courts have.

14

In *People v. Superior Court (Espeso)* (2021) 67 Cal.App.5th Supp. 1, 6 (*Espeso*), the Los Angeles County Superior Court Appellate Division held the misdemeanor DUI defendant was ineligible for diversion. The court explained that "[t]o the extent there [was] a tension" between section 23640 and section 1001.95, it had to read the sections together to avoid repeal by implication. (*Ibid*.) The court disagreed the legislative history demonstrated a clear intent to repeal, explaining legislators' comments and the Legislature's silence on DUIs were inconclusive. (*Id*. at pp. 7-8.) In response to defendant's argument section 1001.95's predecessor, the LA pilot program (§ 1001.98, subd. (h)(3)), expressly excluded DUIs, whereas section 1001.95 did not, the court concluded it was too speculative. (*Id*. at p. 7.) The court stated that assuming without deciding the LA pilot program was section 1001.95's predecessor, the Legislature could have easily concluded excluding DUIs in that section was unnecessary in light of section 23640. (*Ibid*.) The court rejected defendant's reliance on *Tellez* because that court's commentary on section 1001.95 was dicta. (*Id.* at p. 8.) Finally, the court disagreed Governor Gavin C. Newsom's signing statement, which we discuss below, or a pending bill addressing this issue were dispositive because they did not reflect the Legislature's intent when it enacted section 1001.95. (*Id*. at pp. 8-9.) The court concluded defendant failed to rebut the presumption against repeal by implication and it reconciled the sections to give both effect. (*Id*. at p. 9.)

In *People v. Superior Court (Diaz-Armstrong)* (2021) 67 Cal.App.5th Supp. 10, 13, 21 (*Diaz-Armstrong*), the majority in the Riverside County Superior Court Appellate Division held the misdemeanor DUI defendants were eligible for diversion. At the outset, the majority stated the issue was whether section 23640 and section 1001.95 could be harmonized, and if not, which section controlled. (*Id*. at p. 16.) After discussing the other diversion statutes and corresponding case authority detailed above (*id*. at pp. 16-20), the majority noted, "None of the cases discussed above is entirely congruent with ours" (*id*. at p. 20). The majority opined section 1001.95 conflicted with

section 23640 and it could not harmonize the statutes because that would result in redrafting them. (*Id*. at pp. 21-22.) The majority considered the canons of statutory construction and concluded the canon the specific statute controlled over the general statute was not dispositive because either statute could be considered the more specific statute. (*Id*. at p. 22.) However, the majority concluded the canon later statutes supersede earlier statutes was dispositive because it reflected "'"'the last expression of the legislative will . . . .'"'" (*Ibid*.) It also opined this canon was "in accord with other indicators of legislative intent." (*Id*. at p. 23.) The majority noted that after the Legislature enacted section 23640's predecessor, Vehicle Code section 23202, the Legislature enacted other diversion statutes that expressly excluded DUIs. (*Ibid*.) It stated the fact the Legislature did not expressly exclude misdemeanor DUIs from section 1001.95 was significant and where the Legislature used a phrase in one place but not another, it should not be implied where excluded. (*Id*. at pp. 23-24.) The majority acknowledged courts presume the Legislature was aware of preexisting legal authority and case authority. (*Id*. at p. 24.) It added "this [was] of little help" because when the Legislature considered section 1001.95 it only had *VanVleck* and *Hopkins*, and they conflicted. (*Ibid*.)

The majority in *Diaz-Armstrong, supra,* 67 Cal.App.5th Supp. at page 24, turned to section 1001.95's legislative history and noted the first version of the bill had no exclusions (Assem. Bill No. 3234 (2020-2021 Reg. Sess.) § 1). After the majority noted the Legislature amended section 1001.95 to make four offenses ineligible for diversion (Assem. Amend. to Assem. Bill No. 3234 (2020-2021 Reg. Sess.) Aug. 24, 2021), the majority found it persuasive that DUIs were not included on the final list of exclusions, which it construed as evidence the Legislature intended DUIs to be eligible for diversion. (*Ibid*.) It added *Tellez* was not instructive because the legislative histories were different. (*Id*. at p. 25.) Citing to authority stating individual legislators' statements during floor debates were evidence of legislative intent, the majority noted two legislators

16

stated DUIs were not excluded from diversion.[7] (*Id*. at pp. 25-26.) The majority relied on this history to conclude the Legislature intended for misdemeanor DUIs to be eligible for diversion, which also furthered its policy to pursue rehabilitation instead of traditional punishment. (*Id*. at pp. 27-28.)

In dissent, Judge Firetag opined all misdemeanor DUI defendants are categorically ineligible for diversion because section 23640 prohibits it and "nothing in section 1001.95 provides otherwise." (*Diaz-Armstrong, supra,* 67 Cal.App.5th Supp. at p. 28, dis. opn. of Firetag, J.).) He acknowledged reasonable minds could differ on the interplay between section 23640 and section 1001.95, but he opined the better argument was the two sections could be harmonized. (*Ibid*.) Judge Firetag explained this was because there was no textual support to conclude section 1001.95 repealed section 23640, and nothing in section 1001.95 indicated its list of exclusions "[was] exclusive." (*Id*. at pp. 29-31.) After citing to our Supreme Court's admonition repeal by implication is disfavored, Judge Firetag opined that is exactly what the majority did. (*Id*. at pp. 30-31.) He reasoned the two statutes could be harmonized as follows: "[T]he list of misdemeanor offenses that are ineligible for diversion in section 1001.95, subdivision (e) is non-exclusive, and because section 1001.95 makes no mention of section 23640, the prohibition on granting diversion to persons charged with DUI offenses remains." (*Id*. at p. 31.) Finally, Judge Firetag explained the history of courts interpreting section 23640 and other diversion statutes is a long one. (*Id*. at p. 32.) He noted that with the exception of *Hopkins*, the courts in *Weatherill*, *VanVleck*, *Tellez*, and *Moore* all held that unless the Legislature expressly stated otherwise, section 23640 prohibited diversion for DUI

---

[7] In concluding the legislators' statements were persuasive, the majority cited to several cases, including two from our Supreme Court. In *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590, the court stated, "Debates surrounding the enactment of a bill *may* illuminate its interpretation." (Italics added.) In *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 928, the court stated where a bill's *author's* statements are part of the legislative debate, a court may consider them as evidence of legislative intent.

defendants and he found the latter cases, particularly *Tellez* and *Moore*, persuasive. (*Id*. at pp. 32-33.) He concluded by stating, "it is for the Legislature to amend section 1001.95 if it seeks to include DUIs for misdemeanor diversion." (*Id*. at p. 32.)[8]

*5. Application of Other Diversion Statute Authority to Section 1001.95*

We agree with Grassi's implicit assertion that *Tellez, supra,* 56 Cal.App.5th 439, and *Moore, supra,* 58 Cal.App.5th 561, are not controlling because they concerned a different diversion statute, section 1001.36, with a unique legislative history. Those courts had the benefit of analogizing the mental health diversion statute at issue to the military diversion statute the Legislature enacted during the same legislative session to assist with its analysis. We do not.

Grassi, however, relies on dicta from *Tellez* where the court mused DUI offenses were eligible for misdemeanor diversion pursuant to section 1001.95. (*Tellez, supra,* 56 Cal.App.5th at pp. 449-450.) Section 1001.95 was not at issue in *Tellez*, and that court's observations were unnecessary to its resolution of the case. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1158 ["'Dicta consists of observations and statements unnecessary to the appellate court's resolution of the case'"].) Grassi's claim the trial court abused its discretion by incorrectly applying the *Tellez* court's analysis misses the mark. Our review is de novo, and we will address *Tellez* and other diversion statute case authority below when discussing section 1001.95's legislative history and the canons of statutory construction.

---

[8] The OCPD cites to *Diaz-Armstrong, supra,* 67 Cal.App.5th Supp. 10, the case that supports his position. But he does not cite to *Espeso, supra,* 67 Cal.App.5th Supp. 1, the case that undermines his position. A more complete discussion of the applicable case authority would have been beneficial.

*C. Legislative History*[9]

*1. Background*

On February 21, 2020, the Assembly introduced AB 3234, but its subject was the Government and Public Resources Codes; it was not section 1001.95. The Legislature took various actions on this bill over the following months. On June 8, 2020, the Assembly placed AB 3234 on the inactive file.

On August 3, 2020, the Assembly withdrew AB 3234 from the inactive file and placed it on the third reading file for the consideration of proposed amendments. AB 3234's new subject was adding section 1001.95 et seq. and amending section 3055, the elderly parole program. It did not include subdivision (e), or any exclusions. The Assembly Floor Analysis for this version of the bill stated existing misdemeanor diversion (§ 1001.51, subd. (c)), "has a number of exclusions[]" and "[u]nlike existing general misdemeanor diversion," no "misdemeanors [would] be statutorily excluded." It also noted AB 3234's opponents stated it was based on the expired LA pilot program that excluded inter alia, DUIs. On August 11, 2020, the Legislature amended AB 3234 but left section 1001.95 untouched.

On August 24, 2020, the Legislature amended AB 3234 to include subdivision (e)'s exclusions as enacted. The Legislative Counsel's Digest to this amendment stated diversion would be available "*except as specified*." The Assembly Floor Analysis for this version of the bill stated diversion was unavailable for the offenses listed in subdivision (e). The analysis repeated there were already diversion programs with "a number of exclusions[]" and repeated "[u]nlike existing general misdemeanor diversion," no "misdemeanors [would] be statutorily excluded." It reiterated the oppositions' arguments. At the Assembly floor debate that day,

---

[9]     A statute's legislative history controls over the canons of statutory construction where the history provides clues to legislative intent. (*Tellez, supra,* 56 Cal.App.5th at p. 444; *Lewis v. Ryan* (1976) 64 Cal.App.3d 330, 333-334.)

19

Assemblyman Jim Cooper stated section 1001.95 allowed DUI defendants to obtain diversion. AB 3234's author, Assemblyman Phil Ting, did not dispute Cooper's statement.

The OCDA, CDAA, and Judicial Council issued floor alerts opposing AB 3234 and expressing their respective opinions that as written DUI defendants were eligible for diversion pursuant to section 1001.95. The OCDA's floor alert stated AB 3234 was based on the LA pilot program, and the Judicial Council's floor alert stated they were similar and provided a side-by-side comparison of section 1001.95 and the LA pilot program.

On August 31, 2020, at the Senate floor debate, Senator Nancy Skinner stated AB 3234 was based on the LA pilot program. Senator Melissa Melendez stated section 1001.95 allowed DUI defendants to obtain diversion. Senator Holly Mitchell, the bill's sponsor in the Senate, did not refute Melendez's statement.

The Legislature passed AB 3234. The Legislative Counsel's Digest repeated misdemeanor diversion was available "except as specified."

On September 30, 2020, Governor Newsom signed AB 3234 into law. In his signing statement, he stated the following: "I am concerned that the crime of driving under the influence was not excluded from the misdemeanor diversion program. I will seek to expeditiously remedy this issue with the Legislature in the next legislative session." (Governor's message to Assem. on Assem. Bill No. 3234 (Sept. 30, 2020 (2020-2021 Reg. Sess.), at <https://www.gov.ca.gov/wp-content/uploads/2020/09/AB-3234.pdf> [as of Dec. 28, 2021].)

2. *Analysis*

Grassi contends section 1001.95's legislative history "clear[ly]" establishes the Legislature intended "to create a diversion program with as few exclusions as possible[]" and the list of exclusions in subdivision (e), was "exhaustive." She concludes that because the Legislature did not expressly include DUIs in subdivision (e)'s list of

20

exclusions, misdemeanor DUI defendants are eligible for diversion pursuant to section 1001.95. We conclude section 1001.95's legislative history is not that clear.

"Because the ultimate goal is to effectuate the Legislature's intent [citation], courts should consider whether any legislative history provides insight into the legislative intent as to which statute prevails [citations]." (*Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1064.) "[W]e consider legislative history 'as dispositive only when that history is itself unambiguous.' [Citation.]" (*Coso Energy Developers v. County of Inyo* (2004) 122 Cal.App.4th 1512, 1526.)

Here, there is scant evidence of legislative history concerning section 1001.95, and what there is provides little help in ascertaining the Legislature's intent. We do not find the OCDA's, CDAA's, and Judicial Council's floor alerts opposing AB 3234, or Governor Newsom's signing statement, particularly helpful in ascertaining the Legislature's intent when considering and enacting section 1001.95. [10] (*Moore, supra,* 58 Cal.App.5th at pp. 581-582, fn. 12 [Governor's signing statement not binding authority and not reliable indicator of legislative intent]; *Coastside Fishing Club v. California Resources Agency* (2008) 158 Cal.App.4th 1183, 1196, fn. 7 [same].) The interpretation of a statute is a uniquely judicial function. (*People v. Cruz* (1996) 13 Cal.4th 764, 780.) We are not bound to follow the interpretation of complicated statutes voiced by individuals outside the Legislature. [11] (*Id.* at pp. 780-781 & fn. 9.)

_____

[10] The OCPD cites to these floor alerts for the first time in the reply. We do not generally consider arguments raised for the first time in a reply. (*Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1387-1388 [appellate court will not consider arguments raised for the first time in reply because it deprives respondent of opportunity to respond].) Nevertheless, we address Grassi's arguments.

[11] District Attorney Todd Spitzer's opinion section 1001.95 makes misdemeanor DUI defendants eligible for diversion as stated in the Orange County Register is similarly unpersuasive.

21

However, the CDAA in its floor alert did make one observation that is helpful in providing context for the Legislature's enactment of section 1001.95. The CDAA stated, "This bill incorporates the two main provisions in the public safety trailer bills that were removed due to opposition. This *gut and amend* contains provisions that will result in a sea change in public safety policy and should not be approved without full consideration of their sweeping impact." (Italics added.) "'Gut and amend' . . . presumably . . . refers to instances where the contents of a bill are deleted and replaced with different provisions at a late stage, bypassing the usual legislative process." (*Brown v. Superior Court* (2016) 63 Cal.4th 335, 348.)

AB 3234 originally concerned the Government and Public Resources Codes before the Assembly placed it on the inactive file. In the beginning of August 2000, the Legislature withdrew AB 3234 from the inactive file and its new subject was section 1001.95 et seq., as well as section 3055. The Legislature passed it about one month later. We agree with the OCDA this one month of legislative record results in a "sparse" legislative history that is anything but unambiguous.

Grassi's primary argument is that unlike other diversion statutes, the Legislature's intent in enacting section 1001.95 was to be inclusive and provide diversion broadly for all eligible misdemeanors, including misdemeanor DUIs. Grassi asserts the following: "That analysis goes on to re-state . . . what it had stated all along—that there are already diversion programs, but they have too many exclusions and too many requirements; the purpose of [AB] 3234 is to create a diversion program with as few exclusions as possible." [12]

---

[12] In her petition, Grassi discusses in detail section 1001.95's limited legislative history, including its amendments and the various floor analyses. Unfortunately, the OCDA does not provide any detailed analysis regarding these materials. (See Cal. Rules of Court, rule 8.204(a)(1).)

It is true the Assembly and Senate Floor Analyses stated there were other misdemeanor diversion statutes that had "numerous" exclusions. But even if the Legislature believed there were "too many exclusions" as Grassi asserts, the Legislature abandoned that belief when on August 24, 2000, it amended section 1001.95 to add subdivision (e), and its exclusions. The Legislature's inclusion of subdivision (e), refutes Grassi's assertion section 1001.95 "would have no prohibitions or preclusions." If the Legislature was that frustrated with all the diversion exclusions, why did it not expressly exclude section 23640 by stating, "notwithstanding Vehicle Code section 23640." Grassi's reliance on the Legislative Counsel's Digest statement diversion was available "except as specific", i.e., subdivision (e), also misses the mark. The Legislative Counsel's Digest "is not a part of the law." (*California Teachers' Assn. v. Governing Board* (1983) 141 Cal.App.3d 606, 614.)

Again for the first time in the reply, Grassi asserts section 1001.95 differs in a key respect from other diversion statutes that expressly exclude DUI defendants. (See §§ 1001.2, subd. (a); 1001.51, subds. (b), (c)(6); 1001.98, subd. (h)(3).) Of particular relevance here is section 1001.98, subdivision (h)(3), the LA pilot program, which expressly excluded DUI defendants from diversion eligibility despite the existence of section 23640. (§ 1001.98, subd. (h)(3).) Grassi relies on Senator Skinner's comment section 1001.95 was based on the LA pilot program, as well as the Judicial Council's floor alert, to conclude that because the Legislature did not expressly exclude DUIs in subdivision (e), it meant to make them eligible for diversion. Assuming for the sake of argument the Legislature based section 1001.95 on the LA pilot program, the Legislature's failure to exclude DUIs in subdivision (e), does not demonstrate an unambiguous intent to allow diversion in misdemeanor DUI cases. The Legislature could have simply realized excluding DUIs was redundant in light of section 23640. (*Tellez, supra,* 56 Cal.App.5th at p. 448 [no need to exclude DUIs in section 1001.36 because section 23640 already did that].)

Finally, and again for the first time in the reply, Grassi relies on Cooper's and Melendez's unchallenged comments to assert DUI defendants are eligible for diversion pursuant to section 1001.95. We are not persuaded.

"'In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.] Nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy [citation]; no guarantee can issue that those who supported his proposal shared his view of its compass.' [Citation.] A legislator's statement is entitled to consideration, however, when it is a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion. [Citations.]" (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700.) This is a far cry from a full-scale legislative discussion on section 1001.95. To the contrary, it was the personal opinions of two legislators concerning a bill that was introduced weeks earlier.

Based on our review of section 1001.95's legislature history, it is not clear the Legislature intended diversion for misdemeanor DUI defendants. We now turn to the canons of statutory construction for guidance.

## D. Canons of Statutory Construction

When both the statutory language and the legislative history are inconclusive, courts may look to canons of statutory construction to provide an answer. (*Carmack, supra,* 2 Cal.5th at pp. 849-850.) "The rules of grammar and canons of construction are but tools, 'guides to help courts determine likely legislative intent. [Citations.]" (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1017.)

The principle "*[e]xpressio unius est exclusio alterius* means that 'the expression of certain things in a statute necessarily involves exclusion of other things not expressed . . . ." [Citation.]' (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13.) "'If conflicting statutes cannot be reconciled, later

24

enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation].' [Citation.] But when these two rules are in conflict, the rule that specific provisions take precedence over more general ones trumps the rule that later-enacted statutes have precedence. [Citations.]" (*State Dept. of Public Health, supra,* 60 Cal.4th at pp. 960-961.)

In the diversion context, courts have utilized canons of statutory construction to reach varying results. A study of these cases demonstrates the canons of statutory construction are simply guides that can produce varying results, often in the same context, or in the same case.

For example, in *Weatherill*, the majority and dissent reached different results applying the same three canons. In the military diversion context, the *VanVleck* court concluded one canon was controlling while the *Hopkins* court concluded a different canon was controlling. The courts in *Tellez* and *Moore* explained that resort to the canons of statutory construction was unnecessary because the Legislature's intent was clear. Regarding the diversion statute at issue here, misdemeanor diversion, the court in *Espeso, supra,* 67 Cal.App.5th Supp. 1, did not resort to the canons to conclude DUI defendants were ineligible for diversion. The majority in *Diaz-Armstrong, supra,* 67 Cal.App.5th Supp. at pages 22-23, however, concluded one canon was neutral while another canon supported the conclusion DUI defendants were eligible for diversion.

These varying results make clear the canons of statutory construction are not dispositive but rather are guides courts can resort to when a statute's plain language and legislative history do not compel a particular result. Here, the canons do not compel a particular result.

It is true the canon "the expression of certain things in a statute necessarily involves exclusion of other things not expressed[]" would result in concluding section 1001.95 permits diversion for misdemeanor DUI defendants because they are not expressly excluded in subdivision (e). But section 23640 expressly prohibits diversion in

25

DUI cases. Given that section's prohibition of diversion in DUI cases, it is reasonable to conclude the Legislature chose not to include DUIs among the exclusions in subdivision (e) of section 1001.95. To do so would have amounted to a redundancy.

Grassi's reliance on the canon the more recent statute supersedes the older statute would result in section 1001.95 impliedly repealing section 23640, but implied repeals are disfavored, as we explain below. Finally, the OCDA's reliance on the canon the specific statute controls over a conflicting general statute is unpersuasive because beginning with Justice Johnson's dissent in *Weatherill* (*Weatherill, supra,* 215 Cal.App.3d at p. 1582 (dis. opn. of Johnson, J.)), to the majority's opinion in *Diaz-Armstrong* (*Diaz-Armstrong, supra,* 67 Cal.App.5th Supp. at p. 22), depending on one's arbitrary choice of focus, either could be construed as the more specific. Like the legislative history, the canons of statutory construction are of no assistance here.

*E. Harmonization*

""""A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject." [Citation.] Thus, when "'two codes are to be construed, they "must be regarded as blending into each other and forming a single statute." [Citation.] Accordingly, they "must be read together and so construed as to give effect, when possible, to all the provisions thereof." [Citation.]'" [Citation.] Further, """[a]ll presumptions are against a repeal by implication. [Citations.]" [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.'"""" [Citations.] [¶] But the requirement that courts harmonize potentially inconsistent statutes when possible is not a license to redraft the

26

statutes to strike a compromise that the Legislature did not reach. [Citation.] The cases in which we have harmonized potentially conflicting statutes involve choosing one plausible construction of a statute over another in order to avoid a conflict with a second statute. [Citations.]" (*State Dept. of Public Health, supra,* 60 Cal.4th at pp. 955-956.) We presume the Legislature "was aware of existing related laws" when it enacted section 1001.95, and that it "intended to maintain a consistent body of rules." (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199.)

We believe section 23640 and section 1001.95 can be harmonized to give both effect. Our Supreme Court's instruction that repeal by implication is disfavored is the bedrock of our holding. As we explain above, the Legislature in enacting section 1001.95 gave no indication it intended to repeal section 23640. We must presume the Legislature was aware of section 23640, the other diversion statutes, and *Weatherill*, *VanVleck*, and *Hopkins* when it enacted section 1001.95, and concluded it was redundant to expressly exclude misdemeanor DUIs in section 1001.95 in light of section 23640. There is a rational basis for harmonizing section 23640 and section 1001.95 to maintain a consistent body of rules and implement the policies and purposes of both statutes—swift and certain punishment for DUI defendants and rehabilitation for misdemeanor defendants. The statutes are reconcilable and consistent so that they can have concurrent operation.

We hold section 1001.95 authorizes diversion for all misdemeanor defendants except those listed in subdivision (e), and misdemeanor DUI defendants pursuant to section 23640. We construe section 1001.95 in this manner to avoid conflicting with section 23640. Our conclusion does not result in redrafting section 1001.95 to strike a compromise the Legislature did not reach. Section 23640 has been the law since 1998. Again, we presume the Legislature thought it unnecessary to expressly exclude misdemeanor DUIs in section 1001.95 in light of section 23640.

*V. Conclusion*

In dissent about 32 years ago, Justice Johnson concluded with the following: "There is a tendency among appellate judges in writing their opinions, and I am as guilty of this as any other, to discuss tough cases as if they were easy, to characterize debatable answers as being obvious, and to write up razor thin cases as if a vast chasm separates the correct from the incorrect result. We may spend days in the quiet of our chambers trying to formulate our individual positions on a close question, then hours arguing among ourselves, and along the way shift our views to and for several times. Yet when we finally get around to writing the opinion we inform the reader it was a piece of cake. Logic, precedent and principle all pointed in a single direction and the result we reached was inevitable. [¶] Well, in all candor I do not regard the instant case as easy, the answer obvious, or the result inevitable. If nothing else, I hope this dissent exposes the depth of our problem. This time the Legislature has handed us a true conundrum." (*Weatherill, supra,* 215 Cal.App.3d at pp. 1588-1589 (dis. opn. of Johnson, J.))

The Legislature again, in the identical setting, albeit a different diversion statute, handed the courts another diversion conundrum.

Justice Johnson's candid observation that his and the majority's opposing viewpoints were both persuasive applies equally in this case. The panel members here can surely imagine writing this opinion the other way, to conclude misdemeanor DUI defendants are eligible for diversion, based on say section 1001.95's plain language (DUIs are not expressly excluded), or the canons of statutory construction, the expression of some things means the exclusion of others (section 1001.95, subdivision (e), provides exclusions but again DUIs are not expressly excluded) or later enacted statutes supersede earlier statutes (the Legislature enacted section 1001.95 in 2020 and Vehicle Code section in 1998). But as we explain above, we follow our Supreme Court's teaching and harmonize the statutes to avoid an implied repeal.

28

We invite, indeed we implore, the Legislature to resolve yet another entirely avoidable diversion conundrum.

## DISPOSITION

The petition for writ of mandate is denied. The previously ordered stay is dissolved.


O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.